## Bullock v. Pariser

*Arthur M. Rosenbaum*, for plaintiffs.

*Allen Neuman* and *Michael A. Etkin*, for defendants Pariser and Zurbin.

*John F. Ledwith*, for Pennsylvania Insurance Guaranty Association.

*John F. Naulty*, for U.S. Fidelity & Guaranty Co.

*Joel P. Fishbein*, for Fireman's Fund Insurance Co.

DiBONA, G. F., *J.*, May 9, 1979—

## STATEMENT OF THE CASE

A stipulated statement of facts has been made a part of the record in this case, and the following summary is taken from that statement:

On May 7, 1971, plaintiff, Grace Bullock, sustained personal injuries as a result of being bitten by a dog on the premises at 646 South Sixtieth Street, Philadelphia, Pa. The premises were owned by defendants, Marilyn Pariser and Mildred Zurbin, who owned the property and conducted a partnership at that address known as "Kiddie Castle."

The dog which bit plaintiff was owned by the partnership and kept in the store for security pur-

poses. Furthermore, the dog lived on the business premises at all times.

On the day of the incident, the partnership was open and conducting business, and Mrs. Pariser and Zurbin had in effect a liability insurance policy covering the partnership for liability arising out of operation of the business. The policy was issued by Penn State Mutual Insurance Company (P.S.M.I.C.) and provided coverage of $10,000 per injury.

The partnership gave prompt and proper notice of the incident to P.S.M.I.C. However, after suit had been instituted by the plaintiffs against the partnership, P.S.M.I.C. became defunct and the defense of the partnership was undertaken by counsel for the Pennsylvania Insurance Guaranty Association (P.I.G.A.).

When P.I.G.A. became involved in the suit, it immediately investigated the possibility of the existence of other carriers which may have been providing coverage for defendants' liability arising out of said incident. Attention was focused upon two homeowner's policies covering defendants' individual homes. Marilyn Pariser had a homeowner's insurance policy with the Fireman's Fund Insurance Company insuring her home at 10101 Galahad Road, Philadelphia, Pa., while Mildred Zurbin had a similar policy insuring her residence at 1150 Merlin Road, Philadelphia, Pa., issued by the U.S. Fidelity and Guaranty Company.

Neither of these companies are able to admit or deny the existence of the homeowner's policies due to the passage of time from the date of the incident (May 7, 1971) and the time of notification (spring of 1977).

However, both companies issuing said home-

owner's policies agreed that the policies, if in effect, would have contained the following exclusions:

"d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to nonbusiness pursuits; (and)

"e. to bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by any insured, but this exclusion does not apply to bodily injury to any residence employee arising out of and in the course of his employment by any insured."

Neither Pariser nor Zurbin notified their respective homeowner insurance carriers as both believed that the policies would not cover any claims arising out of partnership business.

On June 30, 1977, a jury verdict was entered in favor of plaintiffs and against the partnership in the amount of $5,432.28. No motion was filed to mold the verdict, but subsequently P.I.G.A. raised the contention that the plaintiffs received $1,480.66 in payments from the Equitable Insurance Company under a disability insurance policy, and that if P.I.G.A. must pay any amount to the plaintiffs, it is entitled to set-off the $1,480.66 from the verdict.

## DISCUSSION

The Pennsylvania Insurance Guaranty Association Act of November 25, 1970, P.L. 716, 40 P.S. §1701.101 et seq., was enacted by the legislature in 1970, its purpose being:

"(1) To provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the

payment of such claims, and to *avoid financial loss to claimants* or *policyholders* as a result of the insolvency of an insurer;

"(2) To assist in the detection and prevention of insurer insolvencies; and

"(3) To provide for the formulation and administration by The Pennsylvania Insurance Guaranty Association of a plan of operation necessary to effectuate the provisions of this act." (Emphasis supplied.)

Clearly, the act seeks to protect persons who find that the insolvency of their liability insurance carrier leaves them exposed to suits by injured parties, as well as injured parties whose attempt at recovery may be frustrated by the insolvency of a tortfeasor's liability insurance carrier. The act must be read so as to accommodate both groups.

Every insurer must participate in the association as a condition of writing property and casualty insurance in the Commonwealth. The act, inter alia, provides for the assessment of its members to create a fund to make payments required to achieve the purpose of the legislation.

Included in the powers and duties of the association is the mandate of section 201(b)(1) which provides that:

"The Association shall: (i) Be obligated to make payment to the extent of the covered claims of an insolvent insurer existing prior to the determination of said insurer's insolvency . . . but such obligation shall include only that amount of each covered claim which is in excess of one-hundred dollars ($100.00), and is less than three-hundred-thousand dollars ($300,000.00). In no event shall the association be obligated on a covered claim in

an amount in excess of the obligation of the insolvent insurer under the policy under which the claim arises.

"(ii) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent."

See also Sands v. P.I.G.A., Court of Common Pleas, Philadelphia County, December Term, 1975, no. 1275, by Judge Biunno.

The controversy in this case stems from section 503(a) of the act which prevents non-duplication of recovery:

"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy."

Under this section, the P.I.G.A. is correct in its argument that defendants, Pariser and Zurbin, must first seek coverage under any policy of insurance which covers this incident and was written by a carrier which is presently solvent.

Defendants did make a good faith attempt to discover alternative policy coverage, but they believed that the homeowner's policies did not cover liability arising from purely business-related pursuits.

A common sense reading of the aforementioned exclusion leads this court to the same conclusion. As the liability in this case arose from a strictly business-related endeavor, neither the home-

owner's policy issued by the Fireman's Fund Insurance Company, nor that written by the U.S. Fidelity and Guaranty Company, provided coverage for the incident involved in this case.

In its second argument, the P.I.G.A. contends that it is entitled to a set-off for the money paid to plaintiff by her own insurance company. According to the P.I.G.A., this is called for by the aforestated section entitled "Non-Duplication of Recovery."

However, if the P.I.G.A. desired a deduction or set-off to prevent the possibility of double recovery, it should have asserted this right at trial so that a special verdict could have been returned by the jury specifying how it reached its verdict.

If the jury did not believe that Mrs. Bullock was disabled, but instead made its award solely for pain and suffering, then the fact that she was paid by her own personal disability carrier subsequent to the injury would not make the award a duplication of recovery; (it is now impossible to determine what portion of the award, if any, was based on plaintiff's disability).

By failing to raise this issue at trial the P.I.G.A. has waived any right to the aforesaid set-off or deduction in this matter. Furthermore, should the P.I.G.A. be allowed the $1,480.66 deduction, plaintiff would seek that amount from defendants Pariser and Zurbin against whom the jury verdict was rendered. Certainly, such a result was not intended under the act.

## ORDER

Wherefore, May 9, 1979, it is hereby ordered and decreed that judgment be entered in favor of plaintiff and against solely defendant Pennsylvania In-

surance Guaranty Association, in the total amount of $6,478.34, which is comprised of the following:

| | |
|---|---:|
| Jury Verdict: | $5,432.75 |
| Bill of Costs: | 117.30 |
| Interest to 3/31/79: | 612.79 |
| Cost of Garnishment Proceeding: | 315.50 |
| TOTAL: | $6,478.34 |